UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80225-CIV-MARRA

BVI MARINE CONSTRUCTION LIMITED,

    Plaintiff,

vs.

ECS-FLORIDA, LLC,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant/ Counter-Plaintiff ECS-Florida, L.L.C.'s Motion to Dismiss Amended Complaint (DE 44) ("Motion"), Plaintiff BVI Marine Construction Limited's Response (DE 45), and Defendant's Reply (DE 48). This matter is now ripe for review. For the reasons stated below, the Motion is **GRANTED IN PART and DENIED IN PART**.

### I. Background

Plaintiff BVI Marine Construction Limited ("BVI") entered into a Charter Party with the Defendant ECS-Florida, LLC ("ECS"). Am. Compl., ¶¶ 9-18 (DE 43). ECS was performing bore hole testing as part of a pier-building project off the coast of St. Eustatius in the Caribbean. *Id.* Under the Charter Party and a subsequent amendment, BVI was to furnish to ECS an 85' vessel, a 74' vessel with a 22 ton crane for 33.5 days, and a standby boat to transport the crew from the shore to the drilling vessels. *Id.*, ¶¶ 17-28. BVI alleges that it provided the ships and the equipment as agreed, and that ECS did not indicate that there were problems with BVI's performance. *Id.*, ¶¶ 31-39. BVI further asserts that ECS's personnel made errors, which resulted in all drilling being stopped. *Id.*, ¶¶ 40-60. BVI kept the equipment available to ECS and continued with renting the winches, the power pack, and the crane from its subcontractors even after the drilling had stopped.

*Id.*, ¶¶ 71-105. However, because ECS did not get paid for the drilling, ECS only made the initial payment to BVI, and did not pay BVI in full under the terms of the Charter Party and of the amendment. *Id.*, ¶¶ 90-115. These terms did not provide that payments to BVI were contingent upon ECS receiving payments from the company that hired it, but ECS in effect made its obligations to BVI contingent. *Id.* Additionally, BVI asserts that ECS caused BVI reputation damage, which resulted in BVI losing business. *Id.*

Initially, BVI brought a single breach of contract claim against ECS alleging admiralty jurisdiction and designating the case as maritime under the Federal Rule of Civil Procedure 9(h). (DE 1). While the case was pending, however, the Florida Supreme Court decided *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013), limiting the application of the economic loss rule under Florida law only to product liability cases. Consequently, BVI sought leave to amend the Complaint to add tort claims, which ECS opposed arguing that maritime law governed this case. Leave to amend was granted, and ECS was directed to raise its arguments in the context of a motion to dismiss. (DE 42).

As a result, the Amended Complaint contains the following counts: breach of contract (Count I); fraud in the execution (performance) of the contract (Count II); fraudulent misrepresentation (Count III); breach of implied covenant of good faith and fair dealing (Count IV); quantum meruit (Count V); unjust enrichment (Count VI); negligent misrepresentation (Count VII). Am. Compl. (DE 43). BVI seeks $257,642.27 that was not paid to it under the Charter Party; $69,000 in special damages for the equipment rental; $1,000,000 in special damages for loss of business and reputation; $1,000,000 compensatory damages for the fraud; treble punitive damages; and attorney's fees and costs. *Id.* BVI alleges that the breach of contract count is an admiralty and maritime claim within

the meaning of the Rule (h) of the Federal Rules of Civil Procedure, and that the Court has jurisdiction over it pursuant to 28 U.S.C. § 1333 (admiralty, maritime, and prize cases), and that the Court has diversity jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1332. *Id.*, ¶¶ 4-8. The Amended Complaint also alleges that the Charter Party in question specifically indicates that Florida law shall govern all disputes. *Id.*

The crux of ECS' argument is that maritime law, rather than Florida law, governs this case in its entirety; that the maritime economic loss rule precludes BVI's tort claims; and that this is a breach of contract dispute where tort claims have no place. ECS primarily relies on the Federal Rule of Civil Procedure 12(b)(6). In particular, ECS maintains that fraud in the execution of the contract, fraudulent misrepresentation, and negligent misrepresentation are barred by the maritime economic loss rule; and that the request for punitive damages must be stricken because there are no factual allegations of reckless and wanton conduct as required in admiralty law. Further, the quantum meriut and unjust enrichment claims fail because there was a written contract. Also, according to ECS, all counts sounding in fraud should fail because the fraud has not been alleged with sufficient particularity under the Federal Rule of Civil Procedure 9(b). Additionally, ECS argues that the breach of implied covenant of good faith and fair dealing count is a duplicate of the breach of contract claim. Lastly, ECS asserts that the Amended Complaint is a shotgun pleading because general allegations are incorporated into every claim.

BVI maintains that the claims and the supporting facts are clearly separated and pled with sufficient particularity. Further, BVI states that because the acts upon which the new claims are based did not occur on navigable waters this Court can exercise admiralty jurisdiction over the breach of contract claim, but not over Counts II - VII. Therefore, according to BVI, *Tiara Condo.*

*Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013) applies.

## II. Legal standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Overall, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (internal quotation omitted); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. Discussion

**1. Tort claims**[1]

It must be noted at the outset that the parties are in agreement that the Court can exercise admiralty jurisdiction over the breach of contract claim.  This implies that the Charter Party in question is a maritime contract.  The breach of contract claim, however, is not subject to the Motion to Dismiss.

ECS asserts that this case is governed by maritime law in its entirety because all of BVI's claims are inextricably tied to the Charter Party.  Consequently, ECS argues that the maritime loss rule pronounced in *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) bars BVI's tort claims.  On the other hand, BVI asserts that all of its claims except for the breach of contract count are brought under diversity jurisdiction.  BVI seeks to apply the test established by the Supreme Court in *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 274 (1972), used to determine whether admiralty jurisdiction exists; and it concludes that the Court should not exercise admiralty jurisdiction over its tort claims.  However, the questions of whether admiralty is a proper basis for jurisdiction and whether maritime or state law should apply are different matters.  *See Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1533 (11th Cir. 1990) (addressing the two questions separately and finding that admiralty jurisdiction existed but that state law applied); *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004) (case brought under diversity jurisdiction but where admiralty law applied).  For example, the Supreme Court has characterized one of its decisions as a "maritime case about a train wreck." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S.

---

[1] At times the parties refer to all BVI's new claims, Counts II - VII, as "tort claims."  However, only BVI's claims of fraud in the execution (performance) of the contract, fraudulent misrepresentation, and negligent misrepresentation sound in tort.

14, 18 (2004). Therefore, the issue here is whether state or admiralty law applies even if diversity jurisdiction is invoked. The case of *Diesel "Repower", Inc. v. Islander Investments Ltd.*, 271 F.3d 1318 (11th Cir. 2001) is on point.

In *Diesel "Repower,"* the Eleventh Circuit Court of Appeal considered whether admiralty law or state law applied in a case where both admiralty jurisdiction and diversity jurisdiction were invoked. *Id.* at 1322. The defendant in *"Repower,"* asserted counterclaims under admiralty jurisdiction for breach of contract, fraud, and negligence. *Id.* at 1320. Subsequently, the defendant sought to amend its pleading to base its claims on diversity jurisdiction. *Id.* The court considered whether admiralty law would apply even if jurisdiction is premised on diversity, and laid out the test that the courts should use when assessing this issue. *Id.* at 1322-24. First, the court should look at the state law that the movant urges the court to apply and determine whether this law conflicts with the applicable admiralty rule. *Id.* If there is no conflict, the court should decide whether an admiralty rule is needed, and, if not, apply state law. *Id.* at 1323-24. If there is a conflict, the court should apply state law only if the "underlying admiralty policy is weak and its effects are minimal." *Id.* Generally, the "federal interest in uniformity under admiralty law is great." *Id.* at 1324.

Thus, here the Court must first examine whether there is a conflict between the economic loss doctrines under Florida and admiralty law. In admiralty, the economic loss rule states that "a party may not recover for economic losses not associated with physical injury." *Kingston Shipping Co. v. State of Florida*, 667 F.2d 34, 35 (11th Cir. 1982). Further, in *E. River S.S. Corp. v. Transamerica Delaval, Inc.* the Supreme Court held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986). BVI distinguishes *E.*

*River S.S. Corp.* because BVI's claims do not involve product liability.  Also, it is true that in *E. River S.S. Corp.*, the Supreme Court did not reach the "issue whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic." 476 U.S. 858, 871 n. 6 (1986). Moreover, the economic loss rule most often is invoked when third parties who do not have a contractual relationship to the tortfeasor seek to recover damages.  *See Hercules Carriers, Inc. v. Florida*, 720 F.2d 1201, 1984 AMC 2962 (11th Cir.1983), rehearing denied 728 F.2d 1359 (11th Cir.1984) (finding that owners of vessels delayed as a result of defendant's ship blocking the passage out of port could not recover purely economic damages caused by the delay); *Kingston Shipping Co. v. Roberts*, 667 F.2d 34 (11th Cir.1982) (same).

However, it is clear that the Supreme Court in *E. River S.S. Corp.* was concerned with preventing contract law from "drown[ing] in a sea of tort."  476 U.S. at  866.  Also, when an enforceable contract exists, it is preferable to resolve disputes on the basis of the contractual relationship.  *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 307-10 (1927) (rejecting the charterer's claim in both contract or tort against a repair shop that negligently damaged the ship's propeller causing a delay, stating that the charterer should resolve its dispute through its "contract relations" with the ship's owner with whom it was in privity, not against the repair shop that was under contract only with the vessel's owner and not in privity with the charterer).  Therefore, under maritime law, BVI's tort claims would be barred.  *See also Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1284 (2d Cir. 1994) ("any duty owed by [defendant] to [plaintiff] must be derived from the contract and . . . the negligent misrepresentation claim, which sounds in tort and entails a duty independent of the contract, should have been dismissed") (citing *E. River S.S. Corp.*).

The Florida Supreme Court, relying in part on *E. River S.S. Corp.,* recently limited the application of the economic loss rule to product liability cases only in Florida law. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 400, 404 (Fla. 2013). This decision represents a departure from the Florida Supreme Court's prior precedent. *Id.* at 400. In particular, the question before the Florida Supreme Court was whether the economic loss rule barred an insured's suit against an insurance broker where the parties were in contractual privity and where losses were purely economic. *Id.* The Court answered this question in the negative because the economic loss did not apply in non-product liability cases at all. *Id.* Thus, under Florida law, BVI would be allowed to bring its tort claims, and thus there is a conflict between admiralty and Florida state rules.

The Court must now examine whether the underlying admiralty policy is weak or strong, and may only apply state law if the maritime policy is weak. The Fifth Circuit Court of Appeal has commented that the maritime economic loss rule has a very long and resilient history. *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1021-32 (5th Cir. 1985) (en banc). There is no indication yet that admiralty law will follow the direction of Florida in limiting application of the economic loss rule. Accordingly, maritime law governs and bars BVI's tort claims.[2]

**2. Quantum meruit and unjust enrichment claims**

ECS asserts that quantum meruit and unjust enrichment claims fail because there was a written contract. As noted earlier, there is no disagreement that the Charter Party in question is a maritime contract and that the Court has admiralty jurisdiction over the breach of contract claim. Admiralty jurisdiction extends to quasi-contract claims provided that they arose as a result of breach

---

[2] Court was not called upon to decide which law governs the breach of contract claim, and makes no determination in this regard.

of a maritime contract. *See Gary v. D. Agustini & Asociados, S.A.*, 865 F. Supp. 818, 825 (S.D. Fla. 1994) (citing *Archawski v. Hanioti*, 350 U.S. 532, 536 (1956)). However, even if admiralty jurisdiction is invoked, state law may apply, and courts should employ the balancing test outlined in the previous section to determine which law governs. *See Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1530 (11th Cir. 1990).

Here, ECS asserts that there is no maritime rule with respect to quasi-contract claims and that Florida law should apply. This is consistent with the Eleventh Circuit's precedent. *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F.3d 1293, 1301 (11th Cir. 2009) (there is no admiralty rule with respect to quantum meruit, and, thus, Florida law fills the gap); *see generally, E. River S.S. Corp.*, 476 U.S. at 864-65 ("the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules"). In Florida, no equitable quasi-contract remedies under the theories of quantum meruit and unjust enrichment may be awarded when there is an enforceable contract. *See id.* (no quantum meruit damages were available because a contract existed); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (motion to dismiss an unjust enrichment claim was granted where plaintiff alleged that there was a contract and defendant did not deny it, and plaintiff did not allege that a remedy at law did not exist); *Gary v. D. Agustini & Asociados, S.A.*, 865 F. Supp. 818, 827 (S.D. Fla. 1994) (same).

However, because no Answer to the Amended Complaint has been filed yet, it is unclear at this stage whether existence and enforceability of the Charter Party are at issue in this case. Plaintiff generally is allowed to plead in the alternative. Fed. R. Civ. P. 8(d)(3); *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may

9

plead alternative equitable relief"). Accordingly, Plaintiff shall be allowed to proceed with the quantum meruit and unjust enrichment claims. If necessary, this issue may be re-visited at a later stage of the litigation.

### 3. Breach of implied covenant of good faith and fair dealing

ECS further argues that the breach of implied covenant of good faith and fair dealing count is a duplicate of the breach of contract claim. Under both Florida and maritime law, every contract imposes an obligation of good faith and fair dealing upon the parties in its performance and enforcement. *Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1312 n. 8 (11th Cir. 2009) (Florida law); *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1359 (S.D. Fla. 2007) aff'd, 308 F. App'x 389 (11th Cir. 2009) (admiralty). Other than this, there appears to be no maritime rule with respect to this issue, and both parties rely on Florida law.

Under Florida law, a "breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches instead to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1151 (11th Cir.2005). Further, such a claim may be dismissed as redundant "if the conduct violating the implied covenant is duplicative of the breach of contract claim." *Mendez-Arriola v. White Wilson Med. Ctr. PA*, 3:09CV495/MCR/EMT, 2011 WL 3269451 (N.D. Fla. July 29, 2011) (applying Florida law); *Regency Of Palm Beach, Inc. v. QBE Ins. Corp.*, 08-81442-CIV, 2009 WL 2729954 (S.D. Fla. Aug. 25, 2009) (same).

Here, BVI argues that it identified specific provisions of the Charter Party that ECS violated as basis of its claim, which makes the allegations sufficient to withstand the Motion to Dismiss. However, the same general allegations (paragraphs 15-95, 97-115) are incorporated into both breach

of contract and breach of the implied covenant claims. The paragraphs that form the bulk of the breach of the implied covenant count (paragraphs 121 - 152) essentially restate the incorporated general allegations (paragraphs 15-95, 97-115) adding only that ECS failed to pay "[w]ith malice, intent and knowledge," *see* Am. Compl., ¶ 136 (DE 43). Nevertheless, the conduct allegedly violating the implied covenant is the same as the conduct that is the basis of the breach of contract claim. Accordingly, the breach of the implied covenant of good faith and fair dealing count is due to be dismissed.

### 4. Demand for punitive damages

BVI seeks punitive damages with respect to the claims of fraud in the execution (performance) of the contract (Count II), fraudulent misrepresentation (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and negligent misrepresentation (Count VII). Am. Compl. ¶¶ 150, 182, 199, 249 (DE 43). Having determined that all these counts are due to be dismissed, the Court will grant ECS's Motion to strike BVI's demand for punitive damages.

### 5. Amendment

When a party cannot amend the complaint without the opposing party's consent or the leave of court, the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend need not be given if amending would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). An amendment is futile if the complaint as amended is still subject to dismissal. *Id.*

Here, amending the tort claims would be futile because they are legally barred. However, if Plaintiff can in good faith amend the breach of the implied covenant of good faith and fair dealing claim, the Court will permit it. While the Court makes no determination on the issue of punitive

damages at this time, it appears that recovery of punitive damages is foreclosed under both Florida and maritime law in the absence of tort claims. *See Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 423 n. 9, 432 (2009) (disagreeing with the dissent's statement that recovery of punitive damages is not appropriate for denial of maintenance and cure claims that are not based on personal injury, but not with the dissent's general statement that punitive damages are unavailable for quasi-contractual claims under maritime common law); *Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 66 (2d Cir. 1985) (stating in a case in admiralty that generally there is no recovery of punitive damages in contract actions); *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1332 (S.D. Fla. 1999) (finding under the laws of Florida and several other states that breach of the implied covenant of good faith is not a tort independent of the obligations required by the contract and disallowing a demand for punitive damages, but relying in part with respect to Florida law on the pre-*Tiara Condo* economic loss rule).

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant/ Counter-Plaintiff ECS-Florida, L.L.C.'s Motion to Dismiss Amended Complaint (DE 44) is **GRANTED IN PART and DENIED IN PART**. The Motion is **DENIED** as to BVI's quantum meruit (Count V) and unjust enrichment claims (Count VI), **GRANTED with prejudice** as to BVI's tort claims (Counts II, III, and VII), and **GRANTED without prejudice** as to the breach of implied covenant of good faith and fair dealing claim (Count IV) and the demand for punitive damages. BVI may amend its

pleading within 14 days from the date of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of December, 2013.

_____
KENNETH A. MARRA
United States District Judge